# EXHIBIT 7

April 9, 2026 Separation Agreement that was rescinded

Docusign Envelope ID: AE3786BA-69E5-44AC-82F0-81C7E738FF26

# CONFIDENTIAL SEPARATION AGREEMENT AND GENERAL RELEASE

This Confidential Separation Agreement and General Release ("**Agreement**") is entered into on 6 April 2026 by and between:

1. **KAYLEEN FULTON**, an individual residing at 2525 Arapahoe Ave #E4-526, Boulder, CO 80302 (the "**Employee**"); and

2. **ETHEREUM ASIA PACIFIC LIMITED**, a company incorporated in Singapore (Registration Number 201629253N) with its registered office at 45 North Canal Road, #01-01 Lew Building, Singapore 059301, Republic of Singapore (the "**Company**"),

(collectively, the "**Parties**").

## BACKGROUND

WHEREAS, the Employee has entered into an employment agreement with Lightsource HR, an employer of record service contracted by the Company (the "**Employment Agreement**") whereby the Employee, as part of its Employment Agreement with Lightsource HR, provides services to the Company, and

WHEREAS, the Parties have mutually agreed to terminate the abovementioned Employment Agreement in accordance with the terms and conditions set out in this Agreement.

## AGREED TERMS

1. The Parties agree that, notwithstanding any term to the contrary in the Employment Agreement, the Employment Agreement shall be terminated effective as of 10 April 2026 (the "**Termination Date**").

2. Unless otherwise provided for under this Agreement, the Employee's obligations under the Employment Agreement shall continue until the Termination Date.

3. Unless otherwise provided for under this Agreement, the Company shall pay all outstanding fees due to the Employee up to and including the Termination Date in accordance with the Employment Agreement.

4. In consideration for the Employee's entry into this Agreement and release of claims, the Company shall offer the Employee the following two alternative separation benefits, from which the Employee may elect one only by written notice to the Company at the time of signing this Agreement:

(a) Option A: External Organisation Support

The Company shall use reasonable endeavours for a period of ninety (90) days following the Termination Date to procure that an external organisation, EthStaker LLC, engages the Employee for a period of twelve (12) months at a rate substantially equivalent to the Employee's current rate under the Employment Agreement, and the Company shall fund such external organisation accordingly for that purpose, subject to the external organisation agreeing to such engagement and to terms acceptable to that external organisation and the Employee.

The Employee acknowledges and agrees that: (i) the Company does not guarantee that any external organisation will agree to engage the Employee; (ii) the Company's obligation under this Clause 4(a) is limited to using reasonable endeavours to procure such an engagement and, if such engagement is procured, funding the relevant external organisation accordingly; (iii) any such engagement, if procured, shall be between the Employee and the external organisation, and the Company and Lightsource HR shall not be parties to that engagement and shall have no liability arising from or in connection with it; and (iv) if no such engagement is procured despite the Company's reasonable endeavours during the abovementioned ninety (90) day period, the Employee will instead receive the Separation Payment under Clause 4(b), payable within thirty (30) days after the end of that ninety (90) day period, less applicable taxes and other deductions.

(b) Option B: Separation Payment

In lieu of Option A, the Company, through Lightsource HR, shall make a one-time lump sum payment of US$25,680.28 (the "**Separation Payment**") to Employee within thirty (30) days of the Termination Date, less applicable taxes and other deductions.

(c) The Employee shall indicate the Employee's election of Option A or Option B in writing when signing this Agreement. Once made, that election shall be final and irrevocable unless the Parties agree otherwise in writing.

(d) Employee specifically acknowledges and agrees that the separation benefit elected under this Clause 4 constitutes adequate and full consideration for this Agreement. Employee further acknowledges that they would not otherwise be entitled to the separation benefit elected under this Clause 4 under any employment contract, Company policy, or any law. Employee understands and acknowledges that unless expressly provided for in this Agreement, the Company shall not be responsible for any other benefits related to Employee's employment or release of employment.

(e) Employee further agrees that the Separation Payment to be paid under this Agreement is due solely from the Company and that Lightsource HR has no obligation to pay the Separation Payment, even though the Company's payment will be processed through Lightsource HR.

(f) The intent of the Parties is that payments under this Agreement are either exempt from or comply with Section 409A of the Internal Revenue Code of 1986, as amended ("**Section 409A**"), and this Agreement shall be interpreted to that end. The Parties acknowledge and agree that the interpretation of Section 409A and its application to the terms of this Agreement are uncertain and may be subject to change as additional guidance and interpretations become available. In no event whatsoever shall the Company be liable for any tax, interest or penalties that may be imposed on Employee by Section 409A or any damages for failing to comply with Section 409A. In such regard, the Separation Payment payable under this Agreement represents an amount that is intended to qualify for the "separation pay" exception to Section 409A under Treasury Regulation Section 1.409A-1(b)(9)(iii).

5. In further consideration for the Employee's entry into this Agreement and regardless whether the Employee elects Option A or Option B under Clause 4, the Company, through Lightsource HR, shall make a one-time lump sum payment to the Employee in the gross amount of US$17,613.90, being an amount equal to the Company's current monthly healthcare contribution of US$357.66 multiplied by thirty-six (36) months, payable within thirty (30) days of the Termination Date, and grossed up by the expected value of federal and state taxes payable by the Employee on such amount, less applicable taxes and other deductions. For the avoidance of doubt, the Employee's entitlement under this Clause 5 is independent of, and in addition to, the separation benefit elected under Clause 4.

6. Employee has up to two (2) business days from the date Employee received this Agreement to consider this Agreement ("**Consideration Period**"). This provides sufficient time for Employee to consult with an attorney before signing this Agreement if Employee wishes, at Employee's own expense. Employee

may choose to sign the Agreement before the end of the two (2) business day period. Employee can accept this Agreement by timely signing it and returning it to the Company's legal team at legal@ethereum.org. Employee understands that if the signed Agreement is not received by the Company by the end of the two (2) business day period, the offer under this Agreement will expire and Employee will not be eligible for the consideration set forth herein. This Agreement will become effective when it is timely signed by Employee and returned to the Company ("**Effective Date**").

7. The Employee shall submit a complete and final expense report up to and including the Termination Date. The Company shall review this report and pay the reimbursable expenses to the extent that they are not covered by any advance payments. The Company shall set off any outstanding advances against the final reimbursement payment. Expense reports submitted after the Termination Date shall not be reimbursed.

8. The Employee shall return all items and business documents (including copies) pertaining to the Company or any of its affiliates by the Termination Date. The Employee shall have no right of retention in relation to the abovementioned documents.

9. The Employee is obliged, even after the Termination Date, not to disclose to any third party any confidential business, company, technical, or other information relating to the Company or its affiliates which has become known to them or with which they were entrusted during the term of their engagement. In particular, the Employee's obligations under the Confidentiality and Non-Disclosure Agreement continue to apply beyond the Termination Date. The Employee shall also keep confidential the content of this Agreement unless they are obliged by statutory laws to disclose such information, or where such disclosure is reasonably necessary to effect the purposes of this Agreement (including for avoidance of doubt, disclosure to EthStaker LLC and Employee's legal, accounting, tax and other professional service advisors).

10. With this Separation Agreement, the Parties intend to fully and finally settle their entire legal relationship in relation to the Employment Agreement. The Parties agree that, with the exception of the rights and obligations arising under this Separation Agreement, neither party hereto shall have any further rights, claims, demands, or entitlements against the other party arising from and/or in connection with the Employment Agreement and its termination, be they known or unknown, of whatever kind and irrespective of the date on which they originate. Not included hereunder are non-forfeitable rights and rights resulting from unlawful conduct.

11. In exchange for the separation benefit elected under Clause 4 and the healthcare contribution payment under Clause 5 of this Agreement, Employee, and Employee's heirs, assigns, executors and administrators, hereby releases, remises and forever discharges the Company, Lightsource HR, and each

of their parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, directors, officers, partners, attorneys, shareholders, administrators, employees, agents, representatives, employment benefit plans, plan administrators, fiduciaries, trustees, insurers and re-insurers, and all of their predecessors, successors and assigns, (collectively, the "**Releasees**"), of and from all claims, causes of action, covenants, contracts, agreements, promises, damages, disputes, demands, and all other manner of actions whatsoever, in law or in equity, that Employee ever had, may have had, now has, or that Employee's heirs, assigns, executors or administrators hereinafter can, shall or may have, whether known or unknown, asserted or unasserted, suspected or unsuspected, as a result of Employee's employment with the Company and Lightsource HR, the termination of that employment, or any act or omission which has occurred at any time up to and including the date of the execution of this Agreement ("**Released Claims**").

12. The Released Claims include, without limitation, claims relating to or arising out of (i) Employee's hiring, compensation, benefits, and employment with the Company, (ii) Employee's separation from employment with the Company, (iii) any claims to severance or similar benefits, (iv) any claims to monetary damages, expenses, attorneys' fees, or other indemnities, (v) any claims based on any actions or failures to act that occurred on or before the date of this Agreement, and (vi) all claims known or unknown or that Employee could or has asserted against the Company or Released Parties, at law or in equity, or sounding in contract (express or implied) or tort, including claims arising under any federal, state, or local laws of any jurisdiction that prohibit age, sex, race, national origin, color, disability, religion, veteran, military status, sexual orientation, or any other form of discrimination, harassment, or retaliation, including, without limitation, claims under the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964, as amended; the Rehabilitation Act; the Equal Pay Act; the Family and Medical Leave Act, 42 U.S.C. § 1981; the Civil Rights Act of 1991; the Civil Rights Act of 1866 and/or 1871; the Sarbanes Oxley Act; the Uniform Services and Employment and Re-Employment Rights Act; the Worker Adjustment Retraining Notification Act; the National Labor Relations Act and the Labor Management Relations Act; the Age Discrimination in Employment Act; the Older Workers Benefits Protection Act; and any other similar or equivalent state local, municipal, or common law or ordinance; and any other foreign, federal, state, or local law prohibiting employment discrimination or otherwise regulating employment, any claim or claims for discrimination, failure to prevent discrimination, retaliation, failure to prevent retaliation, harassment, failure to prevent harassment, assault, battery, misrepresentation, failure to pay wages, fraud, deceit, concealment, invasion of privacy, breach of contract, breach of quasi contract, breach of implied contract, wrongful or constructive discharge, breach of the covenant of good faith and fair dealing, libel, slander, negligent or intentional infliction of emotional distress, violation of public policy, negligent supervision, negligent retention, negligence, or interference with business opportunity or with contracts. Employee hereby warrants and represents there is not now pending any complaint, lawsuit, charge, or other claim filed by Employee against

the Company, or any of the Released Parties, with any court or government agency or entity asserting any released Claim.

13. Employee also warrants and represents that Employee shall not seek nor be entitled to personal recovery from the Company or any of the Released Parties, in connection with any Claim released herein and that Employee shall not hereafter, individually, nor as a representative member of a class, file any civil action or lawsuit against the Company or the Released Parties, based upon, arising out of, or related to any Claim released. If Employee violates this Release, Employee will pay all costs and expenses of the Company and/or Released Parties in defending against such action, including reasonable attorneys' fees.

14. Nothing in the Agreement will limit Employee's right to file a charge or testify, assist, or participate in an investigation, hearing, or proceeding conducted by the EEOC, NLRB, or other applicable federal, state, or local government agency.

15. The Release is not intended to bar any claims that, by statute, may not be waived, including but not limited to any workers' compensation claims, unemployment insurance benefits, state disability compensation, previously vested benefits under any Company sponsored benefits plan, or any other rights that cannot by law be released by private agreement. Employee also does not release their right to enforce this Agreement.

16. This Separation Agreement supersedes all prior written or verbal agreements and any other contractual, consulting, advisory, or other relationship or agreements between the Parties.

17. All amendments to this Separation Agreement shall be in writing and signed by both Parties. This Agreement is to be construed and governed in accordance with the laws of Singapore without regard to conflicts of laws principles. All disputes arising out of or in connection with this Agreement or its performance (including the validity of this Agreement) shall be settled by binding arbitration administered by the Singapore International Arbitration Commission ("**SIAC**") under its rules (the "**SIAC Rules**") then in force to the extent such SIAC Rules are not inconsistent with the provisions of this Agreement. The place of arbitration shall be Singapore and the language used in the arbitral proceedings shall be English. The arbitral award made and granted by the SIAC shall be final, binding and incontestable and may be used as a basis for judgment thereon in any court. All costs of arbitration (including, without limitation, those incurred in the appointment of the arbitrator) shall be apportioned in the arbitral award.

18. Each party expressly agrees that nothing contained in this Agreement will in any way constitute or be treated as an admission or concession of liability or wrongdoing by either of the Parties.

Docusign Envelope ID: AE3786BA-69E5-44AC-82F0-81C7E738FF26

Signed by Bastian Aue

Title: Co-Executive Director

(for and on behalf of Ethereum Asia Pacific Limited)

Signed by:
Bastian Aue
C1015B5D399040A...

..............................................

Signed by

(for and on behalf of Employee)

9 April 2026
Kayleen Fulton

..............................................